We're going to go on with the next case on the docket. It's 514-0457 People v. James Westray. Good morning. May it please the court. My name is Tiffany Boy Green and I represent James Westray in this matter. Today I'm going to focus my argument on the first issue raised in our brief, so I would be happy to answer questions on either issue. James Westray made a substantial showing that defense counsel was ineffective for failing to investigate and present available mitigation evidence at his sentencing hearing. Before you get into all of his arguments, tell me why his appeal is not moot. It is not moot because under the state's definition that it provided in its brief for mootness, the test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to a complaining party. Under that definition, the issue is not moot because this is not a mandatory minimum life sentence situation. Mr. Westray is eligible for 20 to 60 years and the state concedes in its brief that Westray could obtain relief in federal court. How do you distinguish people versus men? Mr. Westray acknowledges those Illinois Supreme Court holdings. Oh, do we? We have to. Correct, and he recognizes that. However, the Illinois Supreme Court has retreated from its hardline stance that all sentencing claims are moot because of commutation if you look at the language in People v. Mata. In that case, the Supreme Court found that the defendant could challenge the eligibility factor in that case because he was raising an apprendee challenge. The rationale for that was because an individual's constitutional right to due process of law is superior to the governor's power to commute a sentence. So with that in mind, the court held that due process does prevail and allowed for the sentencing claim to go forward. And I think that was a direct appeal, wasn't it? It was a direct appeal. Yeah. This is a post-conviction case, and People v. Miller used to be right on point for this. I mean, it was a post-conviction case as well alleging ineffective assistance of counsel by failing witnesses. So how is your case, Mr. Westray's case, different from that? Can you distinguish People v. Miller? Well, People v. Miller, if I'm correct, came before People v. Mata. Yeah, but Mata, I think, is a direct appeal. Yeah, so in a post-conviction petition and on appeal, he can raise a constitutional violation. So there isn't a significant difference between a direct appeal or a post-conviction petition proceeding because they both allege a constitutional violation. They can be raised in it, and that can be raised in a post-conviction petition that's proper. So your position is that Mata overruled? Not that Mata overruled, but that Mata undermined the prior opinions by the Illinois Supreme Court on whether or not commutation moves the sentencing claim. You're talking about the Second Circuit case, right? Well, Mata was an Illinois Supreme Court case. And then there's also Madige v. Riley and Simpson v. Battaglia, which were in the federal court, in which they said, under the same reasoning that the Illinois Supreme Court employed in Mata, that when a defendant is eligible for a term of years, sentencing claims are not moved because the defendants' due process rights supersede those of a governor's commutation power. Okay. My notations when I did this research, maybe I'm wrong, and that's what I want you to tell me about, is with regard to Madige v. Riley, the Second Circuit case, I had a note that no Illinois court has adopted this reasoning. Are you saying the Illinois Supreme Court has adopted the reasoning in Mata v. Riley? I'm not sure how to say it, but the Illinois Supreme Court has not addressed it at all. In the cases cited in the state's brief, finding that commutation moot sentencing claims all precede those federal cases. But no Illinois court since 2004, when the Seventh Circuit case that I just described, Madige v. Riley, no Illinois court has adopted the Seventh Circuit's reasoning. And the U.S. Supreme Court has not spoken on it either. What Mr. Westray would like would be for this court to issue an opinion acknowledging these prior holdings in the Illinois Supreme Court, which we understand you are obligated to do and to follow, but ask that the Illinois Supreme Court reconsider its position on mootness. There is now additional reasoning in the federal courts. And in Mata, the Illinois Supreme Court did change its stance. And as the dissent in Mata recognizes, there's not a lot of reasons to distinguish between the constitutional right to raise an apprendee challenge and the constitutional right to effective assistance of counsel. So we're asking that this court acknowledge the prior holdings, Miller and the other cases cited in the state's brief, but ask that the Illinois Supreme Court reconsider its position on mootness based on the reasoning in Mata, in the majority opinion as well as the dissent, and in the federal cases. So basically what we would have to do is affirm the dismissal of the second state petition, affirm the dismissal by the court, and then kind of ask the Supreme Court. Yes, we understand that this court doesn't have the authority to overrule the Illinois Supreme Court or disregard their previous holdings, but we would ask that you look at the definition of mootness that the state provides in its brief, recognize that Mr. Westray is eligible for a sentence of 20 to 60 years, and ask, as part of your holding, that the Illinois Supreme Court recognize that under this definition, it really isn't moot, and that it reconsider its position based on the reasoning in the federal court's Mata and the dissent in Mata. Okay, I'll just briefly address the merits of the claim that Defense Counsel's performance was deficient at sentencing. This was a death penalty case where Mr. Westray entered an open plea three months after the charges and then proceeded to sentencing thereafter. Defense Counsel told Westray's mother that he could not do any mitigation. It wouldn't make a difference. Westray had pled guilty, and if she wanted to present any mitigation, she was going to have to get it herself. So that's not even a minimal investigation. Well, he did try to go to speak with the counselor. He couldn't find that person. No, that was a point of post-conviction counsel. Okay. Trial counsel did nothing other than speak with Westray and his mother, and they testified. There was a friend of hers present in court that day who asked if she could testify, though she really couldn't testify to the abuse. She was on the witness list, so I understand. She was on the witness list. However, that appears to be a list that was provided by Westray and his mother because there were no subpoenas issued or notes from any conversations with those witnesses. So that was deficient, and it prejudiced Mr. Westray because there was a counseling summary available that was in his school records by a social worker who had worked with Mr. Westray as a high school student. And understood the dynamics of his household, the complications, the level of dysfunctionality, and he would have presented it from a different viewpoint, from that of a professional. He could have testified as an expert. So what the jury heard was the testimony from Westray himself and his mother, both of whom obviously were desperate to avoid the death penalty in that case. And their credibility may have been diminished by that overriding concern. However, what the counselor could have testified to would have essentially been what Mr. Westray told him was the situation, correct? There actually was additional information in there. There would have been additional testimony about abuse. However, it would have been in terms of a professional viewpoint and how that affected him developmentally, how that played out at school, how it affected his decisions and why he made certain decisions. It would have given a jury a much broader view of Westray, his background, and why he did certain things. And that would have been additional testimony. There also would have been evidence about his relationship with his brother, which was not something that the defense counsel brought out and the other witnesses. And there was also a school friend who Mr. Westray was no longer in touch with, but he had also witnessed the abuse. So that would have provided additional testimony for the jury to weigh in mitigation. How was Westray when he committed the crime he was convicted of? And wasn't there a gap in time? I know there was some testimony about he struggled when he was 18 or 19, but then he served as a missionary. Yes, there was a lot of positive testimony after that. There was about a 12-year span approximately between the time of his counseling and the time of the offense. But again, that would have been testimony towards a very key developmental point in Mr. Westray's upbringing. And it would have been very helpful for the jury to have that when it was weighing the mitigation and aggravation.  Thank you, Your Honor. May I please go on? Counsel? Jennifer Camden on behalf of the people. I'd like to start by talking about the mootness issue. And I'll begin by talking about the Mata case cited by the defendant. In that case, the defendant's death sentence was commuted to natural life, and the defendant argued on direct appeal, as Your Honor noted, that the state did not prove a statutory aggravating factor at the eligibility phase of the capital sentencing hearing beyond a reasonable doubt. Now, that's one difference between that case and this, because this case involves a claim of ineffective assistance of counsel at the aggravation mitigation phase of the sentencing hearing. And in the Mata case, the Supreme Court held that the defendant's claim was not moot because it involved a challenge to the sufficiency of the evidence on that statutory aggravating factor, which was, the court said, akin to, the functional equivalent of, an element of the offense rather than as a sentencing issue. And the court's decision was based on the Apprendi line of cases because the statutory aggravating factor had to be proved beyond a reasonable doubt in order to increase the sentencing range, in order to make the defendant eligible for the death penalty. And that's not what happened here. And I'd also note that post-Mata, which was a 2005 case, reviewing courts in the state of Illinois continue to hold that claims of ineffective assistance of counsel at the aggravation mitigation phase of capital sentencing hearings are rendered moot by commutation, as in People v. Oaks, a third district case from 2012, in which the court held that commutation mooted a post-conviction claim of ineffective assistance of counsel due to failure to present evidence of defendant's abusive childhood in the mitigation phase. Obviously, that's identical to the claim asserted here. Now, the defendant argues in the reply brief at page 10 that it's under Mata that this court should reject the state's argument that the governor's commutation power is not subject to judicial review. But Mata itself states at page 541 of that opinion that the governor's commutation power is not subject to control by the courts or the legislature, but can be controlled only by the governor's conscience and sense of public duty. I'd also note that Mata at page 548 states that the governor's commutation does not render all challenges by a defendant moot. Rather, only issues challenging the sentence are moot. Again, the issue in this case involves the sentence. The issue in Mata, as the court in Mata held, did not. That was more akin to an element of the offense. And Mata, of course, did not overrule Miller and Williams and Shum and Lucas and that long string side of cases that people included in the answer brief. I also want to address the federal habeas cases that the defendant discusses here. Now, the defendant uses those to argue that sentencing issues are not moot, where a defendant whose death sentence was commuted to natural life would have been eligible for a term of years if the death sentence had not been imposed. But it's not that the defendant's claim is moot because there's no possible remedy available. It's because the state courts lack power under the Williams and Miller, et cetera, to review the governor's sentence. And it's the Illinois Constitution that gives the governor this nearly unreviewable power. The defendant's point that he makes today that a term of years would have been imposed had the death sentence not been imposed was true in all of those cases as well, in Williams and Miller and so forth. And yet the Illinois Supreme Court in those cases held that the sentencing issue was moot. One other point is that the defendant in the reply brief at pages 9 and 10 argues, citing that Madej case, that the United States Constitution, quote, supersedes incompatible state law and that a defendant's federal due process right must prevail. Well, I'd note that in that line of Illinois Supreme Court cases, the defendants in those cases also sought to vindicate a federally guaranteed right to effective assistance of counsel, yet that claim was moot due to the commutation of the sentence. I'd also note that in the People v. Harris case from 2005 in the appellate court, the defendant in that case cited that same line from Madej as well, but the appellate court rejected that citation and held that sentencing issues were mooted under state principles of separation of powers, which the court stated were, quote, beyond the purview of the United States Constitution. And one other point is that that court in Harris did acknowledge the conflict, the tension between the defendant's interest in vindicating his federally guaranteed rights and the state's separations of power principles, but resolved that conflict by noting that the Illinois Supreme Court had issued this long line of cases, Williams and Miller and so forth, finding that these claims were moot. One other point, finally, is that the defendant argues that this court should consider the issue in the interest of judicial economy, but, well, first, the principles of separation of powers are not a formality that can be set aside at will. I'd also note that the court in the Williams case, the Supreme Court in the Williams case, at 209 Illinois 2nd at page 234, after it noted that the sentencing claims were mooted by the commutation of the defendant's sentence, went on to decide other issues in the interest of judicial economy. And I note that because it shows that a reviewing court that is even one that is sensitive to issues of judicial economy will still stop short of deciding this particular mooted issue. With regard to the defendant's arguments on the merits, I do want to note, regarding the performance aspect of this, the trial counsel's performance, that the defendant argues that counsel cannot have made a strategic decision not to interview this list of witnesses given to him by the defendant and cannot have made the strategic decision to look at his school records because he didn't know what those witnesses would have said or what the school records would have contained. The state disagrees. The defendant, in his affidavit attached to the post-conviction petition, swears that he told the defense counsel that this list of witnesses would tell the defense counsel that they had seen the defendant's stepfather physically abusing him. This was a list of, the defendant told his counsel, family and friends, who had witnessed this abuse. And this dovetails with the state's prejudice argument that that evidence would have been cumulative, unnecessary, not inherently mitigating, and so defense counsel would have known just from that information that he need not have interviewed those witnesses. And we have to assume at the second stage post-conviction proceeding that he did not. Counsel doesn't have a constitutional obligation to interview every witness named by a defendant where he knows it to be unnecessary. Second, with regard to the school records, again, the evidence shows that counsel could have reasonably concluded that that evidence would have been cumulative, unnecessary, and that it would have been uncontested. The defendant and his mother both testified in mitigation that the defendant was a middling student, kept his grades up high enough so that he could play sports and that he excelled in sports. And the defense, in fact, presented a scrapbook that the mother had compiled of the defendant's sports victories in school. So from that testimony, the defense would have had no, from that evidence, from that knowledge of that evidence, the defense counsel would have had no reason to investigate his record further. And I finally note that the Knox report, the report of the school counselor, was highly aggravating, much more aggravating than mitigating. Among the notes that Knox makes was that the defendant was referred to counseling due to behavior problems, can be overbearing and aggressive, plays rough, has difficulty controlling his temper, has had numerous fights, wants to be the center of attention, has difficulty losing sports games, has an intense desire to be liked. No defense attorney would have wanted evidence that a school counselor pigeonholed the 14-year-old defendant as a potential future rule breaker, would expect him to have difficulty following rules and controlling his temper in the next school year. This report was far more aggravating than mitigating. And that goes to the question of the defendant's inability to make a substantial showing of prejudice at this stage. Thank you. Okay. Ms. Scott, do you have some comments? Just briefly. Counsel talked about the fact that there is no real reason to distinguish, that in MONA there was this apprendee challenge in that they rejected the reasoning of the fact that, with respect to sentencing claims. However, I urge this court to look at the dissent in that case. And the dissent in that case says, it's very curious, it's odd that the court would distinguish between the due process rights in an apprendee violation and those at issue in right to effective assistance of counsel. So she cites Oakes as a case that adopted that reasoning and rejected a very similar claim. However, Oakes is an appellate court decision, as is Harris, another case that the state cites too. And Harris, although the appellate court rejected the reasoning of the federal courts, was remanded in the federal courts and that was overruled and sent back for resentencing. So Mr. Westray would ask that this court, rather than have to go to federal court and raise the claim there, which he could do, get relief, come back, we would ask that this court simply ask that the Illinois Supreme Court reconsider its position on mootness. And I do want to bring attention to another distinguishing fact between Miller, which you had asked about, and the state mentioned that in that case life was a minimum sentence. It was not a situation where the defendant was eligible for a term of years. Mr. Westray does not have a mandatory life sentence here. It's a situation where he could be sentenced to something between 20 and 60 years. With respect to the merits of the claim and the performance aspect, Strickland is clear. Defense counsel cannot make any decisions that are strategic until he talks to witnesses and learns the facts and decides at that point what he's going to admit into evidence. And here there was absolutely no investigation, so there was nothing strategic. And we disagree about the report by Randy Knox. There was a lot of positive evidence contained in there about his good attitude during counseling, his desire to improve his behaviors, to make his parents proud, that he improved his ability to follow rules following counseling, and he complied with authority more frequently. It also explained why some of the negative behaviors were happening in the context of his dysfunctional family life. So we disagree with that. We would ask that this court please ask the Illinois Supreme Court to reconsider its position on this. Thank you.